UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

In re:

Case No. 9:11-bk-07437-BSS
Chapter 7

PETER T. DVORAK,

Debtor.
_______________________________________/

JEFF ELLINGTON,
d/b/a PHOENIX DEMOLITION

Plaintiff

vs.

Adv. No. : ____________

PETER T. DVORAK

Defendant.
_______________________________________/

**COMPLAINT OBJECTING TO DISCHARGEABILITY OF DEBT**

Jeff Ellington, d/b/a Phoenix Demolition, a creditor of Peter T. Dvorak, by and through its undersigned counsel, files this Complaint Objecting to Dischargeability of Debt pursuant to 11 U.S.C. §523, and in support thereof, respectfully states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. This is an adversary proceeding as defined by Fed. R. Bankr. P. 7001 to determine the dischargeability of a debt pursuant to 11 U.S.C §523 of the Bankruptcy Code.

2. The Court has jurisdiction over this core proceeding pursuant to 11 U.S.C. §523 and 28 U.S.C. §157.

3. Venue is proper in this district pursuant to 28 U.S.C §1409.

4. The Defendant, Peter T. Dvorak (the "**Debtor**" or "**Dvorak**") filed his Chapter 7 Petition on April 20, 2011 (the "**Petition Date**").

5. Jeff Ellington, d/b/a Phoenix Demolition ("**Ellington**" or "**Plaintiff**") is a creditor by virtue of that certain agreement with Peter Dvorak and CMI Investments, LLC, dated September 29, 2009 (the "**Agreement**") in the approximate amount of $262,733.44 (the "**Ellington Claim**") before interest, costs and attorneys' fees as provided for in the Agreement. A true and correct copy of the Agreement is attached hereto as Exhibit "A."

## GENERAL ALLEGATIONS

6. Dvorak, either individually or through a number of partnerships or limited liability companies formed in Indiana or Florida, was a real estate developer and landlord for multiple projects located in Bloomington, Indiana and throughout the Untied States.

7. Dvorak is an "Insider," within the meaning of 11 U.S.C. 101(31) of the Bankruptcy Code, of Pinnacle Properties Management Group, LLC ("**Pinnacle**") and CMI Investments, LLC ("**CMI**").

8. On or around June 12, 2008, Pinnacle entered into a contract with Ellington to perform demolition work at 301 College Ave., (the "**Goodyear Contract**") in Bloomington, Indiana, in the amount of $134,000. A copy of the Goodyear Contract is attached hereto as Exhibit "B."

9. On or around August 7, 2008, Pinnacle entered into a contract with Ellington to perform demolition work at 501 N. Collage and 509 N. Collage and 502 N.

Morton (the "**Buildings Contract**"), in Bloomington, Indiana in the amount $188,000. A copy of the Buildings Contract is attached hereto as Exhibit "C."

10. On or around April 27, 2009, Ellington filed a Notice of Intention to Hold Mechanic's Liens against the property that was the subject of the Goodyear Contract (the "**Goodyear Lien**") when Pinnacle failed to make payments to Ellington as required in the Goodyear Contract.

11. On or around May 19, 2009, Phoenix filed its Notice of Intention to Hold Mechanic's Liens against the property that was the subject of the Buildings Contract (the "**Buildings Lien**" and collectively with Goodyear Lien, the "**Mechanic Liens**") when Pinnacle failed to make payments to Ellington as required in the Buildings Contract.

12. Based upon certain representations made by Dvorak to Ellington that the Goodyear Contract and the Buildings Contract would be paid in full, Ellington entered into the Agreement, which provided for Ellington to release the Mechanic Liens if CMI executed a Real Estate Mortgage Note and Real Estate Mortgage on property commonly known as College Inn (the "**College Inn Property**") and provided other collateral.

13. Based upon Dvorak's representations to Ellington, Ellington only consented to the Agreement if Dvorak personally guaranteed payment of the Goodyear Contract and the Buildings Contract rather than Pinnacle.

14. At the time of preparing the Agreement, Dvorak represented that there was more than enough equity in the College Inn property to satisfy the Ellington Claim.

15. At the time Dvorak made such representation, he knew or should have known that the loan on the College Inn Property was in default and that the note exceeded the value of the College Inn Property.

16. As set forth in the Agreement, Dvorak agreed to provide additional collateral if the note was not paid in full by the maturity date.

17. At the closing on September 29, 2009 (the "**Closing**"), Dvorak represented that he personally owned or had control over undeveloped lots located at 1618 W. Arlington Road (the "**Arlington Lot**") and 114 N. Spring Street (the "**Spring Lot**"). In the presence of Shelly Puckett, the closing agent for Title Plus, Dvorak stated he would transfer the Arlington Lot and Spring Lot to Ellington in partial satisfaction of the Mechanic Liens.

18. At the Closing, Dvorak represented that the Arlington Lot was worth at least $60,000 and was free and clear of any liens. Dvorak provided Ellington with a copy of an appraisal to support the value of the Arlington Lot.

19. At the Closing, Dvorak represented that the Spring Lot was worth at least $50,000 and was free and clear of any liens. Dvorak provided Ellington with a copy of an appraisal to support the value of the Spring Lot.

20. Dvorak represented that he would transfer or cause to transfer the Arlington Lot and the Spring Lot to Ellington if Ellington would release the Mechanic Liens.

21. At the time Dvorak made such representations he knew or should have known that the Arlington Lot and the Spring Lot were fully encumbered.

**COUNT I**

11 U.S.C §523(a)(2)(A)

22. Plaintiff realleges and reincorporates paragraphs 1 through 21 as though fully set forth herein.

23. This is an action objecting to the dischargeability of the debt owed to Ellington by the Dvorak pursuant to §523(a)(2)(A).

24. Dvorak represented to Ellington that he had sufficient unencumbered assets or control over sufficient unencumbered assets that Dvorak would transfer to Ellington if Ellington agreed to release the Mechanic Liens.

25. Dvorak representations to Ellington were made with the intent to deceive Ellington in order that CMI, an entity controlled by Dvorak, could refinance its obligations to German American Bank on the College Inn Property.

26. Based upon Dvorak's business reputation and Dvorak's statements that the College Inn Property had sufficient equity and that the Arlington Lot and the Spring Lot were owned free and clear by Dvorak or an entity that Dvorak controlled, Ellington reasonably relied on Dvorak's representations.

27. Ellington sustained a loss when he released the Mechanic Liens as a result of Dvorak's intentional misrepresentation.

WHEREFORE, Plaintiff requests that this Court enter an order determining the Ellington Claim, which is in excess of $262,733.44, is nondischargeable pursuant to 11 U.S.C §523(a)(2)(A) of the Bankruptcy Code and for such other and further relief as is just.

**COUNT II**
11 U.S.C §523(a)(6)

28. Plaintiff realleges and reincorporates paragraphs 1 through 21 as though fully set forth herein.

29. This is an action objecting to the dischargeability of the debt owed to Ellington by the Dvorak pursuant to §523(a)(6).

30. Dvorak knowingly and intentionally intended to injure Ellington by substituting Ellington's superior Mechanic Liens with promises of repayment from fully encumbered property.

31. Dvorak's willful disregard of Ellington's superior Mechanic Liens, in order that CMI could refinance its obligations with German American Bank, was intended to injure Ellington.

32. Ellington has sustained a loss as the proximate cause of releasing the Mechanic Liens.

WHEREFORE, Plaintiff requests that this Court enter an order determining the Ellington Claim, which is in excess of $262,733.44, to be nondischargeable and for such other and further relief as is just.

*/s/ Susan Heath Sharp*
Susan Heath Sharp
Florida Bar No. 0716421
Stichter Riedel Blain & Prosser, P.A.
110 East Madison St., Ste. 200
Tampa, FL 33602
813-229-0144
813-229-1811 (facsimile)
ssharp@srbp.com
Attorneys for Creditor:
Jeff Ellington d/b/a Phoenix Demolition

# EXHIBIT A

**AGREEMENT**

**THIS AGREEMENT** made and entered into this 19th day of ~~August~~ Sept, 2009, by and between Jeff Ellington d/b/a Phoenix Demolition ("Phoenix"); Peter Dvorak ~~Pinnacle Properties Management Group, LLC~~ ("Pinnacle" Dvorak); and CMI Investments, LLC ("CMI").

**WITNESSETH**

**WHEREAS**, on the 27th day of April, 2009, Phoenix recorded two Sworn Statements and Notice of Intention to Hold Mechanic's Liens against property which Pinnacle manages, specifically, as Instrument Numbers: 2009006559 and 2009006550; and

**WHEREAS**, on the 19th day of May, 2009, Phoenix recorded the following Amendment to Sworn Statement and Notice of Intention to Hold Mechanic's Lien Instrument Number: 2009006550 as Instrument Number: 2009008292; and

**WHEREAS**, on the 3rd day of June, 2009, Phoenix recorded the following Amendment to Sworn Statement and Notice of Intention to Hold Mechanic's Lien Instrument Numbers: 2009006550 as Instrument Number: 2009009284; and

**WHEREAS**, Pinnacle acknowledges that it owes Phoenix the total amount of Two Hundred Sixty-Two Thousand Seven Hundred Thirty-Three and 44/100 Dollars ($262,733.44) for demolition work for Pinnacle; and

**WHEREAS**, Pinnacle disputes the validity of the liens, as recorded; and

**WHEREAS**, the parties wish to resolve the disputes between them by this Agreement without the necessity of protracted litigation;

**NOW, THEREFORE**, in consideration of the mutual agreements of the parties herein contained and those yet to be performed, the parties hereby acknowledge formally the circumstances and existing facts herein set forth and agree as follows:

1.      Phoenix agrees to execute Releases on all Sworn Statements and Notices of Intention to Hold Mechanic's Liens and Amendments Instrument Numbers: 2009006559, 2009006550, 2009008292, and 2009009284, immediately upon execution of this Agreement.

2.      CMI is engaged in a loan transaction with German American Bank with regard to Real Estate located at 301 N. College Avenue, Bloomington, Indiana, legally described in Exhibit A, attached hereto. Upon and after closing with German American Bank, CMI will execute the Real Estate Mortgage Note and Real Estate Mortgage, as attached hereto as Exhibits B and C, in favor of Phoenix in the amount Two Hundred Sixty-Two Thousand Seven Hundred Thirty-Three and 44/100 Dollars ($262,733.44), granting a mortgage interest to Phoenix in the Real Estate described in Exhibit A.

3.      Execution of the Note and Mortgage by CMI as provided in paragraph 2, and release by Phoenix of all Sworn Statements and Notices of Intention to Hold Mechanic's Liens as provided in paragraph 1, above, shall constitute resolution and satisfaction of this dispute by and between the parties.

4.      Any notice required or received when personally delivered or sent by United States mail, postage prepaid, certified and return receipt requested, addressed to Phoenix, Pinnacle or CMI, as the case may be, at the address set forth below the signature of such party hereto.

5.      This Agreement shall be construed under and in accordance with the laws of the State of Indiana and jurisdiction shall lie with the courts of Monroe County.

6.      This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns.

7. This Agreement constitutes the sole and only agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties respecting the transaction and cannot be changed except by their written consent.

8. Time is of the essence in this Agreement.

9. All rights, duties and obligations of the signatories hereto shall survive the passing of title to, or an interest in, the property.

10. If the Note has not been paid in full by the maturity date, Phoenix will have the option of requesting substitute collateral for the Note in exchange for an extension of the maturity date. This option is solely at the discretion of Phoenix.

11. This Agreement may be executed simultaneously or in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Fax signatures are to constitute original signatures and be binding on the parties.

**[SIGNATURE PAGE TO FOLLOW]**

**IN WITNESS WHEREOF** the parties hereto have set their hands and seals on the day and year first hereinabove written.

Jeff Ellington d/b/a Phoenix Demolition
600 W. That Road
Bloomington, IN 47403

~~Pinnacle Properties Management Group, LLC~~

Peter Dvorak, ~~Member~~
520 N. Walnut Street, Suite 100
Bloomington, IN 47403

CMI Investments, LLC

Peter Dvorak, Member
520 N. Walnut Street, Suite 100
Bloomington, IN 47403

302641/11306-28

08/31/2011 14:59 8123367242 ELLIS LAW PAGE 10/36

## EXHIBIT "A"

Lot Number Eleven (11) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-seven (37), bounded as follows: Commencing 279 feet South of the Northwest corner of said Lot Number 37; thence East 132 feet; thence South 65-3/4 feet; thence West 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number Two (2) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-Seven (37), bounded as follows: Commencing 279 feet South of the Northeast corner of said Out Lot No. 37; running thence West 132 feet; thence south 65-3/4 feet; thence East 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number One (1) in Woodburn's Addition to the City of Bloomington, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in the City of Bloomington, Indiana, and bounded as follows, to-wit: Commencing at a point 344 3/4 feet south of the Northeast corner of said Out Lot Number 37, thence running West 132 feet, thence South 65 3/4 feet thence running East 132 feet, thence running North 65 3/4 feet and to the place of beginning.

ALSO, Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot No. 37 in said City and bounded and described as follows: Commencing 344 3/4 feet South of the Northwest corner of said Out Lot No. 37, running thence East 132 feet, thence South 65 3/4 feet; thence West 132 feet, thence North 65 3/4 feet to the place of beginning. EXCEPTING THEREFROM 52 feet of even width off the East end of said Lot No. 12 in Woodburn's Addition as hereinabove described.

ALSO, Fifty-two (52) feet off of the East end of Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in said City bounded and described as follows, to-wit: Commencing Three Hundred Forty-four and Three-fourths (344-3/4) feet South of the Northwest corner of said Out Lot Number Thirty-seven (37); running thence East One Hundred Thirty-two (132) feet, thence South Sixty-five and Three-fourths (65-3/4) feet; thence West One Hundred Thirty-two

08/31/2011 14:59 8123367242 ELLIS LAW PAGE 11/36

(132) feet; thence North Sixty-five and Three-fourths (65-3/4) feet to the place of beginning.

# REAL ESTATE MORTGAGE NOTE

$ 262,733.44
Principal Amount

Executed: August , 2009
Maturity Date: August , 2010

FOR VALUE RECEIVED, the undersigned, CMI Investments, LLC (hereinafter "Maker"), does hereby promise to pay to the order of Jeff Ellington d/b/a Phoenix Demolition ("Holder"), its successors and/or assigns, at 680 W. That Road, Bloomington, Indiana 47403, or at such other place as Holder may designate in writing, in lawful money of the United States of America, the principal sum of Two Hundred Sixty-Two Thousand Seven Hundred Thirty-Three and 44/100 Dollars ($262,733.44), with interest at the rate of five percent (5%) per annum on the outstanding principal balance existing from time to time, together with costs of collection, attorney fees and without relief from valuation or appraisement laws.

I. PAYMENT TERMS. The entire principal balance, together with all accrued and unpaid interest and any other charges, advances and fees, if any, outstanding hereunder shall be due and payable in full on the earlier of the Maturity Date or upon acceleration of the Note, whichever is first occurring. All sums due by this Note, including principal, interest or other expenses, shall be paid, in cash, by Maker on or by the Maturity Date. All sums due by this Note, shall be paid in immediately available cash proceeds by Maker.

II. REPRESENTATIONS AND WARRANTIES OF MAKER. Maker warrants that it is authorized to enter into the Note and Mortgage executed herewith, as applicable, and to perform as provided in the Note and Mortgage.

III. APPLICATION OF PAYMENTS. Each payment referred to above shall be applied first to the payment of the interest then accrued and due on the unpaid principal balance under this Note with the remainder of each installment being applied to the reduction of the unpaid principal. The interest referred to above shall be paid on the outstanding principal for the exact number of days principal remains outstanding and shall be computed on the basis of a 360-day year, which shall be deemed to consist of twelve, 30-day months.

IV. PREPAYMENT. Maker shall have the privilege of prepaying any principal due under this Note on any interest paying date. There shall be no prepayment premium charged on the amount of any prepayment.

V. SECURITY. This Note is secured by a Real Estate Mortgage ("Mortgage"), of even date herewith, encumbering certain real property more particularly described therein, and this Note is also secured by any other instruments, now or hereafter executed by Maker in favor of Holder.

The real estate more specifically described below shall be held as security for payment of the indebtedness hereunder:

a. Real estate owned by CMI Investments, Inc., legally described as:

Lot Number Eleven (11) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-seven (37), bounded as follows: Commencing 279 feet South of the Northwest corner of said Lot Number

37; thence East 132 feet; thence South 65-3/4 feet; thence West 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number Two (2) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-Seven (37), bounded as follows: Commencing 279 feet South of the Northeast corner of said Out Lot No. 37; running thence West 132 feet; thence south 65-3/4 feet; thence East 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number One (1) in Woodburn's Addition to the City of Bloomington, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in the City of Bloomington, Indiana, and bounded as follows, to-wit: Commencing at a point 344 3/4 feet south of the Northeast corner of said Out Lot Number 37, thence running West 132 feet, thence South 65 3/4 feet thence running East 132 feet, thence running North 65 3/4 feet and to the place of beginning.

ALSO, Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot No. 37 in said City and bounded and described as follows: Commencing 344 3/4 feet South of the Northwest corner of said Out Lot No. 37, running thence East 132 feet, thence South 65 3/4 feet; thence West 132 feet, thence North 65 3/4 feet to the place of beginning. EXCEPTING THEREFROM 52 feet of even width off the East end of said Lot No. 12 in Woodburn's Addition as hereinabove described.

ALSO, Fifty-two (52) feet off of the East end of Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in said City bounded and described as follows, to-wit: Commencing Three Hundred Forty-four and Three-fourths (344-3/4) feet South of the Northwest corner of said Out Lot Number Thirty-seven (37); running thence East One Hundred Thirty-two (132) feet, thence South Sixty-five and Three-fourths (65-3/4) feet; thence West One Hundred Thirty-two (132) feet; thence North Sixty-five and Three-fourths (65-3/4) feet to the place of beginning.

DEFAULT AND ACCELERATION. If default be made in any payment, as herein provided, when due, or in the performance of any of the terms, agreements, covenants or conditions contained in the Mortgage or any other instrument given to secure the payment hereof (all of which are referred to as the "Security Documents"), then, in any of such events, or at any time thereafter, the entire principal of this Note, irrespective of the maturity date specified herein, together with attorney fees incurred in collection or enforcing payment or performance thereof, with interest from the date of such default on the unpaid principal balance hereof at the rates hereinabove specified shall at the election of Holder, and without relief from valuation or appraisement laws, become immediately due and payable. It is understood that time of payment or performance hereunder is of the essence.

VI.  FORBEARANCE BY HOLDER. The rights or remedies of Holder as provided in this Note and the Security Documents shall be cumulative and concurrent, and may be pursued singly, successively or together. The failure to exercise any such right or remedy shall in no event be construed as a waiver of the rights to the later exercise thereof, or the release thereof. The

acceptance by Holder of any payment tendered by Maker shall not be deemed a waiver by Holder of any delinquencies owed Holder by Maker, nor shall such acceptance be deemed a waiver by Holder of any default hereunder. The acceptance of such payment notwithstanding, Holder shall retain all rights and remedies as herein provided.

VII. WAIVER OF DEMAND, ETC. Maker and all endorsers, guarantors, sureties, accommodation parties hereof and all other persons liable or to become liable for all or any part of this indebtedness, severally waive demand, presentment for payment, notice of dishonor, protest and notice of protest, and expressly agree that the Note and any payment coming due under it may be extended or otherwise modified, from time to time without in any way affecting their liability hereunder.

VIII. MISCELLANEOUS. The following provisions apply in this Note:

A. This Note shall be construed according to and governed by the laws of the State of Indiana.

B. If Maker consists of two or more parties, such parties shall be jointly and severally liable on all obligations hereof.

C. This Note may not be changed or terminated orally.

IN WITNESS WHEREOF, this Note has been executed as of the date first hereinabove written.

MAKER:

CMI INVESTMENTS, LLC

By: ______________________

Peter Dvorak, Member

This Instrument Prepared By:
Angela F. Parker, Attorney at Law
Andrews Harrell Mann Carmin & Parker, P.C.
400 W. 7th St., Ste. 104, P.O. Box 2639
Bloomington, IN 47402-2639
Telephone: (812) 332-4200

302745/11306-28

2009017490 MTG $24.00
10/02/2009 01:13:37P 6 PGS

Monroe County Recorder IN
Recorded as Presented

## REAL ESTATE MORTGAGE

THIS REAL ESTATE MORTGAGE (herein "Instrument") is made this 29th day of ~~August~~ Sept 2009, between CMI Investments, LLC ("Mortgagor"), and Jeff Ellington d/b/a Phoenix Demolition, ("Mortgagee"), whose address is 608 W. That Road, Bloomington, IN 47403.

WHEREAS, Mortgagor is indebted to Mortgagee in the principal sum of Two Hundred Sixty-Two Thousand Seven Hundred Thirty-Three and 44/100 Dollars ($262,733.44), which indebtedness is evidenced by a Real Estate Note dated of even date herewith (herein "Note"), due and payable as therein described; and

WHEREAS, Mortgagor has agreed to provide security to Mortgagee for Mortgagor's indebtedness upon the following described real estate located in Monroe County, in the State of Indiana, to wit:

Lot Number Eleven (11) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-seven (37), bounded as follows: Commencing 279 feet South of the Northwest corner of said Lot Number 37; thence East 132 feet; thence South 65-3/4 feet; thence West 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number Two (2) in WOODBURN'S ADDITION to the City of Bloomington, Indiana, being a subdivision of Out Lot Thirty-Seven (37), bounded as follows: Commencing 279 feet South of the Northeast corner of said Out Lot No. 37; running thence West 132 feet; thence south 65-3/4 feet; thence East 132 feet; thence North 65-3/4 feet to the place of beginning.

ALSO, Lot Number One (1) in Woodburn's Addition to the City of Bloomington, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in the City of Bloomington, Indiana, and bounded as follows, to-wit: Commencing at a point 344 3/4 feet south of the Northeast corner of said Out Lot Number 37, thence running West 132 feet, thence South 65 3/4 feet thence running East 132 feet, thence running North 65 3/4 feet and to the place of beginning.

ALSO, Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot No. 37 in said City and bounded and described as follows: Commencing 344 3/4 feet South of the Northwest corner of said Out Lot No. 37, running thence East 132 feet, thence South 65 3/4 feet; thence West 132 feet, thence North 65 3/4 feet to the place of beginning. EXCEPTING THEREFROM 52 feet of even width off the East end of said Lot No. 12 in Woodburn's Addition as hereinabove described.

ALSO, Fifty-two (52) feet off of the East end of Lot Number Twelve (12) in Woodburn's Addition to the City of Bloomington, Monroe County, Indiana, being a subdivision of Out Lot Number Thirty-seven (37) in said City bounded and described as follows, to-wit: Commencing Three Hundred Forty-four and Three-fourths (344-3/4) feet South of the Northwest corner of said Out Lot Number Thirty-seven (37); running thence East One Hundred Thirty-two (132) feet, thence South Sixty-five and Three-fourths (65-3/4) feet; thence West One Hundred Thirty-two (132) feet; thence North Sixty-five and Three-fourths (65-3/4) feet to the place of beginning.

TO SECURE TO Mortgagee the repayment of the indebtedness evidenced by the Note, with interest, if applicable, and all renewals, extensions and modifications thereof; the payment of all other sums with interest thereon advanced in accordance herewith to protect the security of this Instrument; and the performance of the covenants and agreements of Mortgagor herein contained, Mortgagor does hereby mortgage, warrant, grant, convey and assign to Mortgagee, the real estate above described as a second mortgage, inferior to the lien of mortgage of German American Bank, its successors and/or assigns.

TOGETHER with all buildings, improvements, structures and tenements now situated or hereafter erected on said real estate, all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water, water rights, and water stock appurtenant to said real estate, and all property of every kind and nature whatsoever, whether real, personal or mixed real and personal property, tangible and intangible, now owned or hereafter acquired by Mortgagor and now or hereafter located in, on, or about the real estate encumbered hereby, or used or intended to be used in connection with said real estate or intended or designated (wherever located) to be incorporated into the structures situated or to be situated on said real estate including, but not limited to, all equipment and fixtures; and the proceeds from any insurance or condemnation award pertaining thereto; all of which, including all proceeds and products thereof, and all replacements, additions and accessions therefor or thereto, shall be deemed to be and remain a part of the real estate encumbered by this Instrument. All of the foregoing, together with said real estate are hereinafter referred to as the "Real Estate."

Mortgagor covenants that Mortgagor is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant, convey and assign the Real Estate and that Mortgagor will warrant and defend generally the title to the Real Estate against all claims and demands, whatsoever.

Mortgagor and Mortgagee covenant and agree as follows:

1. PAYMENT. Mortgagor shall promptly pay when due the principal of the indebtedness evidenced by the Note, and all other sums secured by this Instrument.

2. APPLICATION OF PAYMENTS. Unless applicable law provides otherwise, all payments received by Mortgagee under the Note or this Instrument shall be applied by Mortgagee in the following order of priority: amounts payable by Mortgagee for Mortgagor under paragraphs and hereof because of Mortgagor's failure to pay said sums; interest payable on the Note; principal of the Note; interest payable on advances made pursuant to paragraph 5 hereof; principal of advances made pursuant to paragraph 5 hereof; and any other sums secured by this Instrument in such order as Mortgagee, at Mortgagee's option, may determine; provided, however, that Mortgagee may, at Mortgagee's option, apply any sums payable pursuant to paragraph 5 hereof prior to interest on and principal of the Note, but such application shall not otherwise affect the order of priority of application specified in this paragraph .

3. TAXES, CHARGES AND LIENS. Mortgagor shall pay all water and sewer rates, rents, and real estate taxes and assessments attributable to the Real Estate by Mortgagor, when due, directly to the payee thereof, or in such other manner as Mortgagee may designate in writing. Mortgagor shall promptly furnish to Mortgagee all notices of amounts due under this paragraph, and Mortgagor shall promptly furnish to Mortgagee receipts evidencing such payments. Mortgagors shall promptly discharge any lien which has, or may have, priority over or equality with, the lien of this Instrument, and Mortgagor shall pay, when due, the claims of all persons supplying labor or materials to or in connection with the Real Estate.

4. PRESERVATION AND MAINTENANCE OF REAL ESTATE. Mortgagor shall not commit waste or permit impairment or deterioration of the Real Estate, shall not abandon the Real Estate, shall restore or repair promptly and in a good and

workmanlike manner all or any part of the Real Estate to the equivalent of its original condition, or such other condition as Mortgagee may approve in writing, in the event of any damage, injury or loss thereto, whether or not insurance proceeds are available to cover in whole or in part the costs of such restoration or repair, shall keep the Real Estate, including improvements, fixtures and equipment thereon in good repair and shall replace fixtures and equipment on the Real Estate when necessary to keep such items in good repair, shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Real Estate, and shall give notice in writing to Mortgagee of and, unless otherwise directed in writing by Mortgagee, appear in and defend any action or proceeding purporting to affect the Real Estate, the security of this Instrument or the rights or powers of Mortgagee. Without Mortgagee's prior written consent, neither Mortgagor nor any tenant or other person shall remove, demolish, alter or construct additions to any improvement now existing or hereafter erected on the Real Estate or any fixture or equipment in or on the Real Estate except when incident to the replacement of fixtures or equipment with items of like kind.

5.    PROTECTION OF MORTGAGEE'S SECURITY. If Mortgagor fail to perform the covenants and agreements contained in this Instrument, or if any action or proceeding is commenced which affects the Real Estate or title thereto or the interest of Mortgagee therein, including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Mortgagee at Mortgagee's option may make such appearances, disburse such sums and take such action as Mortgagee deems necessary, in its sole discretion, to protect Mortgagee's interest, including but not limited to, disbursement of attorney's fees, entry upon the Real Estate to make repairs, and procurement of satisfactory insurance.

Any amounts disbursed by Mortgagee pursuant to this paragraph, with interest thereon, shall become additional indebtedness of Mortgagor secured by this Instrument. Unless Mortgagor and Mortgagee agree to other terms of payment, such amounts shall be immediately due and payable and shall bear interest from the date of disbursement at the rate stated in the Note unless collection from Mortgagor of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate which may be collected from Mortgagor under applicable law. Nothing contained in this paragraph shall require Mortgagee to incur any expense or take any action hereunder.

6.    CONDEMNATION. Mortgagor shall promptly notify Mortgagee of any action or proceeding relating to any condemnation or other taking, whether direct or indirect, of the Real Estate, or part thereof, and Mortgagor shall appear in and prosecute any such action or proceedings.

7.    FORBEARANCE BY MORTGAGEE NOT A WAIVER. Any forbearance by Mortgagee in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any right or remedy.

8.    REMEDIES CUMULATIVE. Each remedy provided in this Instrument is distinct and cumulative to all other rights or remedies under this Instrument or afforded by law or equity, and may be exercised concurrently, independently, or successively, in any order whatsoever. No waiver or release by Mortgagee or any of its rights or remedies hereunder, or otherwise, shall be considered a waiver or release of any other or subsequent right or remedy of Mortgagee; no delay or omission in the exercise or enforcement by Mortgagee of any rights or remedies shall ever be construed as a waiver of any right or remedy of Mortgagee; and no exercise or enforcement of any such rights or remedies shall ever be held to exhaust any right or remedy of Mortgagee.

9.    ACCELERATION IN CASE OF INSOLVENCY. If Mortgagor shall voluntarily file a petition under the Federal Bankruptcy Code, as such Code may from time to time be amended, or under any similar or successor Federal Statute relating to bankruptcy, insolvency, arrangements or reorganizations, or under any state bankruptcy or insolvency act, or file an answer in an involuntary proceeding admitting insolvency or failure to pay debts as they come due, or if Mortgagor shall fail within sixty (60) days

to obtain a vacation, stay or dismissal of involuntary proceedings brought for the reorganization, dissolution or liquidation, or if an order for relief under the Federal Bankruptcy Code shall be entered against the Mortgagor, or if a trustee, receiver or custodian shall be appointed for Mortgagor's property, or if the Real Estate shall become subject to the jurisdiction of a Federal bankruptcy court or similar state court, or if Mortgagor shall make an assignment for the benefit of Mortgagor's creditors, or if there is an attachment, execution or other judicial seizure of any portion of Mortgagor's assets and such seizure is not discharged within sixty (60) days, then Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Instrument to be immediately due and payable without prior notice to Mortgagor, and Mortgagee may invoke any remedies permitted by paragraph 15 of this Instrument. Any attorney's fees and other expenses incurred by Mortgagee in connection with bankruptcy or any of the other aforesaid events shall be additional indebtedness of Mortgagor secured by this Instrument pursuant to paragraph 5 hereof.

10. TRANSFERS OF THE REAL ESTATE OR OF BENEFICIAL INTERESTS IN MORTGAGOR; ASSUMPTION. On sale, encumbrance, or transfer of all or any part of the Real Estate, or any legal or equitable interest therein, or beneficial interests in Mortgagor, Mortgagee may at Mortgagee's option, declare all of the sums secured by this Instrument to be immediately due and payable, and Mortgagee may invoke any remedies permitted by paragraph 15 of this Instrument.

11. NOTICE. Except for any notice required under applicable law to be given in another manner, any notice to Mortgagor provided for in this Instrument shall be given by mailing such notice by certified mail, return receipt requested, addressed to Mortgagor at Mortgagor's address as shown herein or at such other address as Mortgagors may designate by notice to Mortgagee as provided herein, and any notice to Mortgagee shall be given by certified mail, return receipt requested, addressed to Mortgagee at Mortgagee's address as shown herein or at such other address as Mortgagee may designate by notice to Mortgagor as provided herein. Any notice provided for in this Instrument or in the Note shall be deemed to have been given to Mortgagor or Mortgagee when given in the manner designated.

12. SUCCESSORS AND ASSIGNS BOUND; JOINT AND SEVERAL LIABILITY; CAPTIONS. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Mortgagee and Mortgagor, subject to the provisions of paragraph 10 hereof. The captions and headings of the paragraphs of this Instrument are for convenience only and are not to be used to interpret or define the provisions hereof.

13. GOVERNING LAW; SEVERABILITY. This Instrument shall be governed by the law of the State of Indiana. In the event that any provision of this Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Instrument or the Note which can be given effect without the conflicting provisions, and to this end the provisions of this Instrument and the Note are declared to be severable.

14. WAIVER OF VALUATION AND APPRAISEMENT. Mortgagor hereby waives the applicability of valuation and appraisement laws.

15. ACCELERATION; REMEDIES. Upon breach of any covenant or agreement of Mortgagor in this Instrument or under the Note, including, but not limited to, the covenants to pay when due any sums secured by this Instrument, Mortgagee at Mortgagee's option may declare all of the sums secured by this Instrument to be immediately due and payable without further demand and may foreclose this Instrument by judicial proceeding and may invoke any other remedies permitted by applicable law or as provided herein. Mortgagee shall be entitled to collect all costs and expenses incurred in pursuing such remedies, including but not limited to attorney fees, costs of documentary evidence, abstracts and title reports.

16. RELEASE. Upon payment of all sums secured by this Instrument, Mortgagee shall discharge this Instrument.

17. PRIORITY OF MORTGAGE LIEN. This Instrument shall remain in full force and effect notwithstanding any extension or extensions of the maturity or other reamortization of the obligations which this Instrument secures and notwithstanding the fact that such extensions and reamortizations may be evidenced by a note or notes signed and dated after the date of this Instrument.

IN WITNESS WHEREOF, Mortgagor has executed this Instrument on the date first above written.

MORTGAGOR:

CMI INVESTMENTS, LLC

By: ______________________
Peter Dvorak, Member

STATE OF INDIANA )
) SS:
COUNTY OF MONROE )

Subscribed and sworn to before me, a Notary Public, in and for said county and state, this 29th day of August, 2009, at which time Peter Dvorak, as authorized Member of CMI Investments, LLC, personally appeared and acknowledged the execution of the above and foregoing Real Estate Mortgage to be a voluntary act and deed.

My Commission Expires:

June 25, 2015

______________________
Kathleen Wissing, Notary Public
A resident of Monroe County

*I affirm, under the penalties for perjury, that I have taken reasonable care to redact each Social Security number in this document, unless required by law. Angela F. Parker*

This Instrument Prepared By:
Angela F. Parker, Attorney at Law
ANDREWS HARRELL MANN CARMIN & PARKER, P.C.
400 W. 7TH Street, PO Box 2639
Bloomington, Indiana 47402-2639
Telephone: (812) 332-4200

302747/11306-28

08/31/2011 14:52 8123367242 ELLIS LAW PAGE 18/26

EXHIBIT B

June 12, 2008

Jeff R. Ellington d/b/a Phoenix Demolition
680 W. That Rd.
Bloomington, IN 47403

DEMOLITION LETTER AGREEMENT – GOODYEAR TIRE BUILDING

Dear Jeff:

On behalf of Pinnacle Properties Management Group, LLC ("Pinnacle"), I am pleased to offer you the demolition work for the building located as 301 S. College Ave., Bloomington, Indiana, formerly known as the Goodyear Tire Building (the "Building"). By signing this letter, you agree to demolish the Building upon the terms set out in this letter for the flat fee of one hundred thirty four thousand dollars ($134,000.00).

You are to demolish the Building in compliance with all applicable laws, ordinances, and regulations. You are to remove all materials from the site and dispose of it in a construction material-approved dump site of your choosing. Your demolition work will begin on, but not before, June 27, 2008, and work must be completed by July 18, 2008. Payment will be due sixty (60) days after completion of the work.

You must leave the lot in a clean, neat condition down to the concrete slab of the Building and the asphalt parking lot, without damaging the slab or asphalt. Further, you must not excavate or remove soil from the property.

You acknowledge that, pursuant to an Environmental Restrictive Covenant dated August 7, 2006, a copy of which we have provided to you, the concrete slab and asphalt parking lot must be left intact and in good condition. You must indemnify and hold Pinnacle and Downtown Redevelopment Partners, LLC harmless from any additional work, penalties, or other cost fees, including but not limited to reasonable attorney's fees, that result if you fail to leave the concrete slab or parking lot in good condition or if you disturb the soil.

You will also obtain and maintain the required coverages per the *Indemnity & Insurance Agreement between Owner and Contractor* listing Downtown Redevelopment Partners, LLC and Pinnacle as additional insureds and provide us with an insurance certificate evidencing such coverage.

I look forward to working with you on this project.

Sincerely,

Keith R. Williamson
Pinnacle Properties Management Group, LLC

By signing below, I agree to the terms of this letter and shall perform the work according to its terms.

Jeff R. Ellington d/b/a Phoenix Demolition

6-13-08
Date

FROM : <LLINGTON FAX NO. : Aug. 30 2011 10:50AM P3

Fax to 1-866-864-0247

from 

Rise from the Ashes
PHOENIX
DEMOLITION

680 W. That Road • Bloomington, IN 47403
332-5882
Licensed and Certified by Indiana State Chemist

Invoice No. 0613081
Sheet No. 1
Date 2-4-09

| Proposal Submitted To | Work To Be Performed At |
|---|---|
| Name Pinnacle Properties / Downtown Devel. | Name |
| Street 400 W. 7th Suite 200, P.O. Box 1961 | Street 301 S. College Ave |
| City Bloom State IN 47402 | City Bloomington State IN |
| Telephone Number 335-1961 Fax | Telephone Number office 331-2400 |

We hereby propose to furnish all the materials and perform all the labor necessary for the completion of

Demolition of Goodyear building $134,000.00

Please pay from this invoice.
No [illegible] will be sent.
THANK [illegible] BUSINESS.

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of ______ Dollars ($ ______ ).
with payments to be made as follows: $ ______ Deposit, Balance $ ______ Due Upon Completion.

Any alteration or deviation from above specifications involving extra work, will become an extra charge over and above the estimate. Insurance on above work to be taken out by

Respectfully submitted [signature]

All work to be completed in 60 days subject to weather, accidents or delays beyond our control.

Note – This proposal may be withdrawn by us if not accepted within 60 days.

## ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accpeted. You are authorized to do the work as specified. Payment will be made as outline above. Upon default of payment partial or full, a lien will be place on the property.

Accepted/Date ______ Signature ______

***After 30 days, a 1-1/2% service charge per month will be assessed to the account.***

EXHIBIT C



August 7, 2008

Jeff R. Ellington d/b/a Phoenix Demolition
680 W. That Rd.
Bloomington, IN 47403

DEMOLITION LETTER AGREEMENT – CMI Investments, LLC

Dear Jeff:

On behalf of Pinnacle Properties Management Group, LLC ("Pinnacle"), I am pleased to offer you the demolition work for the buildings located at 501 N Collage, 509 N. Collage, & 502 N. Morton., Bloomington, Indiana, formerly known as the Collage Motor Inn, Uncle Elizabeth's, and the house at 9th and College (the "Buildings"). By signing this letter, you agree to demolish the Buildings upon the terms set out in this letter for the flat fee of one hundred eighty eight thousand dollars ($188,000.00).

You are to demolish the Buildings in compliance with all applicable laws, ordinances, and regulations. You are to remove all materials from the site and dispose of it in a construction material-approved dump site of your choosing. Your demolition work will begin on or before, August 18, 2008. Payment will be due ninety (90) days after completion of the work.

You must leave the lot in a clean, neat condition including seed and straw.

You must indemnify and hold Pinnacle and CMI Investments, LLC harmless from any additional work, penalties, or other cost fees, including but not limited to reasonable attorney's fees.

You will also obtain and maintain the required coverages per the *Indemnity & Insurance Agreement between Owner and Contractor* listing Downtown Redevelopment Partners, LLC and Pinnacle as additional insureds and provide us with an insurance certificate evidencing such coverage.

I look forward to working with you on this project.

Sincerely,

[signature]

Keith R. Williamson
Pinnacle Properties Management Group, LLC

By signing below, I agree to the terms of this letter and shall perform the work according to its terms.

[signature]
Jeff R. Ellington d/b/a Phoenix Demolition

8-7-08
Date



1-866-869-0297

from

680 W. That Road • Bloomington, IN 47403
332-5882
Licensed and Certified by Indiana State Chemist

Invoice No. 0807081
Sheet No. 1
Date 2-4-09

| Proposal Submitted To | Work To Be Performed At |
|---|---|
| Name Pinnacle Properties Management | Name Downtown Collage Motor INN |
| Street 400 W. 7th St. Suite 200 | Street P.O. Box 1961 |
| City Bloom State IN 47402 | City Bloom. State IN. 47402 |
| Telephone Number 335 1961 Fax | Telephone Number 331-2400 |

We hereby propose to furnish all the materials and perform all the labor necessary for the completion of

Demolition of 501 N. Collage 509 N Collage 502 North Morton, Bloomington IN.

$ 188,000.00

Please pay from this invoice.
No ... will be sent.
THANK ... BUSINESS.

All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of ______ Dollars ($ ______ ).
with payments to be made as follows: $ ______ Deposit, Balance $ ______ Due Upon Completion.

Any alteration or deviation from above specifications involving extra work, will become an extra charge over and above the estimate. Insurance on above work to be taken out by

Respectfully submitted [signature]

All work to be completed in 60 days subject to weather, accidents or delays beyond our control.

Note – This proposal may be withdrawn by us if not accepted within 60 days.

## ACCEPTANCE OF PROPOSAL

The above prices, specifications and conditions are satisfactory and are hereby accpeted. You are authorized to do the work as specified. Payment will be made as outline above. Upon default of payment partial or full, a lien will be place on the property.

Accepted/Date ______ Signature ______

***After 30 days, a 1-1/2% service charge per month will be assessed to the account.***